FILED
00 APR -7
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
APR 0 7 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| MILDRED L. DUKE, individually and as, Administratrix of the Estate of FRED DUKE, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, et al.,<br><br>Defendants | Case No. CV-99-TMP-2196-NE |

## MEMORANDUM OPINION

The above-styled cause is before the court on the motion for partial summary judgment filed by defendant State Farm Fire and Casualty Company ("State Farm") on December 17, 1999. The motion has been fully briefed and the parties have consented to exercise of jurisdiction by the undersigned, pursuant to 28 U.S.C. § 636(c).

Plaintiff's complaint is stated in three counts. Count I alleges generally that plaintiff Mildred L. Duke was injured in an automobile accident caused by one Kristy Hoffman and, at the time, that plaintiff was insured by defendant against injuries caused by uninsured or underinsured motorists, and that defendant has "breached the contracts of insurance" by failing or refusing to pay coverage benefits to plaintiff. Count II alleges a tort claim for bad faith refusal to pay, and Count III alleges a claim on behalf of plaintiff Fred Duke (prior to his death) for the loss of consortium and companionship of his wife, Mildred Duke, due to the injuries caused in the automobile accident. Count III does not explicitly allege breach of contract or demand benefits under uninsured motorist

1

coverage from defendant, but, as Kristy Hoffman has not been sued in this action, the court assumes that plaintiff intends Count III to be a direct cause of action against State Farm for uninsured motorist coverage for Fred Duke. Defendant's motion for partial summary judgment seeks dismissal of plaintiff's breach of contract and bad faith refusal to pay claims, contending that no breach of contract has occurred in the uninsured motorist provisions of the contract because plaintiff has not yet established that she or the estate of Mr. Duke are "legally entitled to recover" from the tortfeasor, Ms. Hoffman, and absent proof of a breach of contract, plaintiff cannot establish a bad faith refusal to pay. State Farm concedes that plaintiff maintains a claim against it for uninsured motorist benefits.[1] In briefing on the motion, plaintiff acknowledged that she has no viable bad faith claim, which is being "voluntarily dismissed." (See Plaintiff's Brief in Opposition to Summary Judgment, Doc. 9).

## Summary Judgment Standard
## Undisputed Facts

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

---

[1] It is unclear whether defendant concedes that Mrs. Duke, as administratrix of the estate of her deceased husband, has a claim for uninsured/underinsured motorist coverage under the policies arising from Mr. Duke's loss of consortium with his wife. Clearly, plaintiff is attempting to assert such a claim.

2

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

The facts relating to the motion are undisputed. Plaintiff Mildred L. Duke was in an automobile accident on August 13, 1998, when her car collided with that of Kristy Hoffman. At the time of the accident, plaintiff had two policies of insurance with defendant providing coverage for injuries caused by uninsured/underinsured motorists ("UM coverage"); total UM coverage was

$40,000. Soon after the accident, plaintiff began to complain of back pain and went to the hospital for treatment. She has received medical treatment, including surgery, for a herniated disc, which her treating physician attributes almost entirely to the accident. Defendant contends that a review of plaintiff's medical records by a physician defendant retained suggests that she did not suffer a herniated disc in the accident, but only a back strain and that she had chronic, pre-existing degenerative arthritis of the spine associated with age, not the accident. When Ms. Hoffman's automobile liability carrier offered to pay her policy limit of $20,000, defendant State Farm advanced that sum to plaintiff in order to preserve its right of subrogation against Hoffman. Plaintiff then demanded a total of $65,000 (composed of the $20,000 advance, $40,000 in UM coverage, and $5,000 in Medical Benefits coverage under the policies) to settle her UM coverage claim with defendant. After obtaining Dr. Edward Laughlin's medical review of plaintiff's records, defendant forwarded a copy of Dr. Laughlin's report to plaintiff's counsel and suggested that they "discuss settlement possibilities." The next day, suit was filed.

## Discussion

The motion for partial summary judgment attacks two legal theories advanced by plaintiff: first, her claims for breach of the insurance contract and, second, for bad faith refusal to pay. Plaintiff now concedes that the bad faith claim is due to be dismissed, so the court will focus its analytical powers on the breach of contract claim.

While attacking the breach of contract claim, defendant acknowledges that plaintiff retains a direct action against it for UM coverage under to the two insurance policies owned by her. The argument between the parties seems to boil down to whether plaintiff's claim should be denominated

5

a "breach of contract" claim or a "direct claim for UM coverage benefits." The court confesses that it misses the fine distinction between the two, at least now that no bad faith refusal to pay claim is in the case. The long and the short of the matter remains that plaintiff has sued defendant saying that defendant is required by the insurance policies to pay her up to $40,000 in UM benefits for the damages she suffered in the accident. State Farm does not deny that such a claim exists or that plaintiff can sue State Farm directly on the insurance contracts to obtain UM benefits due to the accident with Hoffman. The distinction between such a claim and one asserting a "breach" of the insurance contracts because State Farm has refused to pay UM coverage benefits is too ethereal to grasp. Whether viewed as a "contractual" claim for benefits or a "breach of contract," the essence of the claim is plaintiff's assertion that defendant's insurance policies require it to pay for the damages she suffered in the accident with Ms. Hoffman.

Nevertheless, the court concludes that State Farm's analysis of Alabama law is correct; Alabama courts do draw a distinction between a direct claim for UM coverage benefits under an insurance contract and a breach of the insurance contract. See Quick v. State Farm Mutual Automobile Insurance Co., 426 So.2d 1033 (Ala. 1983); LeFevre v. Westberry, 590 So.2d 154 (Ala. 1991). The courts have explained that, in order to be entitled to UM coverage benefits, the plaintiff must first show that she is "legally entitled to recover" against the uninsured/underinsured tortfeasor; the insurance obligation to pay UM coverage does not come into existence under the terms of the insurance policy until this initial hurdle is met. The courts have said that, unless and until plaintiff can show (1) fault on the part of the uninsured tortfeasor, (2) causing damages to the plaintiff, and (3) the extent of those damages, her own insurer has no legal obligation to pay UM coverage benefits to her. "Thus, there can be no breach of an uninsured motorist contract, and therefore no claim for

6

bad faith, until the insured proves that he is legally entitled to recover." Quick v. State Farm Mutual Automobile Insurance Co., 426 So.2d 1033, 1035 (Ala. 1983).

Now, having said that, the Alabama courts also make clear that, unlike Georgia, an Alabama plaintiff need **not** sue the uninsured tortfeasor as a precondition to bringing a suit directly against her own insurer for recovery of UM benefits. State Farm Automobile Insurance Co. v. Baldwin, 470 So.2d 1230 (Ala. 1985); LeFevre v. Westberry, 590 So.2d 154 (Ala. 1991). The suit for UM benefits can be used as the vehicle for establishing the tortfeasor's fault, the lack of insurance coverage for the tortfeasor, the damages suffered by the plaintiff, and the extent of damages — all of the proof necessary for plaintiff to recover a judgment against her own insurer for UM benefits. Whether one calls such a suit a "breach of contract" action or a "direct action for UM coverage benefits" seems an exceedingly fine line, at least when the breach of contract claim is not harnessed in tandem with a bad faith claim. In any event, Alabama law says the insured can sue the insurer on a claim for UM coverage benefits, not breach of contract. Consequently, defendant is entitled to summary judgment on any claim denominated a "breach of contract" claim, while plaintiff retains the right to pursue "a direct claim against the insurer for UM coverage benefits."

By separate order, the court will grant defendant's motion for partial summary judgment insofar as plaintiff is asserting either a "breach of contract" claim or a bad faith refusal to pay claim.

DONE this the 6th day of March, 2000.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE